MRS. LILLIAN GAMBLE, EXECUTRIX, COMPLAINANT, APPELLANT, *v.* H. O. FULTON, TRUSTEE, *et al.*, DEFENDANTS, APPELLEES.

(*Nashville,* December Term, 1932.)

Opinion filed April 8, 1933.

PRIDE TOMLINSON and FRY & WOODY, for complainant, appellant.

SAM HOLDING, for defendants, appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This appeal presents a contest between the personal representative of the late W. S. Fleming and his widow as to the right of the latter to homestead and dower. The

chancellor decreed in favor of the widow and the executrix has appealed.

Mr. Fleming left a will which contained the following provision for his widow:

"*Item II.* I bequeath to my beloved wife, Frances M. Fleming, the proceeds of my life insurance policy in the Volunteer State Life Insurance Company, being for $5,000, after deducting any indebtedness due the Company, and authorize and empower her to receive said proceeds from said Company and receipt therefor. I also bequeath to her my automobile.

"I also devise to my wife my home place fronting 100 feet on West 6th Street, Columbia, Tennessee, running back between parallel lines about 240 feet to the Methodist Church property, and also the ell lying back of H. B. Adams lot on which the old frame stable is located.

"The property bequeathed and devised to my wife in this Will is intended as her full share of my estate and in lieu of all she would take if I had died intestate, and is conditioned only on her surviving me."

Other items of the will dispose of specific articles of personalty, another policy of insurance was devoted to the payment of testator's debts, there was a statement that the proceeds of the policy given to his wife were so bequeathed in order that she might use the same to the extent necessary to clear the encumbrances on the home place, and the residuary clause divided the balance of the estate among the three daughters of the testator and the children of testator's deceased son. Other provisions of the will are not material to this inquiry.

Mr. Fleming died November 2, 1929. His estate appeared to be abundantly solvent at the time of his death. Most of his property, however, consisted of real estate,

much of it was encumbered, and by reason of the decrease in value of such property within the last three years, the estate turns out to be insolvent. Not merely insolvent in a technical sense, but absolutely insolvent. It has been necessary to sell all of the testator's real estate. After discharging the encumbrances on said real estate, there remains on hand, as the proceeds of same the sum of $7,960. It is stipulated that testator's remaining debts largely exceed that sum.

Upon the death of the testator, the widow retained possession of the home place, as she was entitled to do, until it became necessary to sell said place for the payment of debts. *Wright* v. *Eakin,* 151 Tenn., 681, 687; *Smith* v. *Thomas,* 82 Tenn. (14 Lea), 324. Up until the time the home place was sold, Mrs. Fleming received therefrom $1600 in rents.

In addition to the $1600 so received, the widow collected the proceeds of the policy in the Volunteer State Life Insurance Company, amounting to $5,000. Except for the rents collected as aforesaid, the devise of the home place to the widow failed when it became necessary to subject that property to the indebtedness of the estate.

To justify her claim for dower and homestead herein, the widow relies on subsection 2 of section 8358 of the Code, section 2404 of the Code of 1858. That section is as follows:

"Dissent from will, and endowment.—A widow may dissent from her husband's will:

"(1) Where a satisfactory provision in real or personal estate is not made to her; in which case she shall, in writing, signify her dissent in open court, to be entered of record, within one year after the probate of the will.

"(2) Where a provision in personal estate is made for

her, but the whole of the husband's property, including the bequest, is taken for the payment of his debts; in which case, without any formal dissent, she may sue for her dower.

"And in either case, she shall be endowed and provided for as if her husband died intestate, and shall be entitled to her distributive share as provided in section 8360."

This court undertook an exegesis of subsection 2 above in *Jarman* v. *Jarman,* 72 Tenn. (4 Lea), 671, and gave the subsection a liberal interpretation in favor of the widow. It was held that no formal dissent was required of the widow under subsection 2. It was said that the widow of a testator was entitled to presume that he owned and could give the property bequeathed to her in his will, and that if such bequest failed on account of the condition of his estate, she was entitled to the informal dissent conferred by subsection 2 by operation of law. It was apparently held that if a devise of real estate to the widow failed by reason of the indebtedness of the estate, she was entitled to this informal dissent provided by subsection 2, just as where a bequest of personalty failed for a like reason. The writer of the opinion (Judge Turney) said that in his opinion "even if after the payment of debts a portion of the bequest remained, but by comparison with the entire amount was inconsiderable, the widow's rights under the second division would not be embarrassed." The court finally observed:

"The obvious intention of the Legislature was that the indebtedness of the husband to utter insolvency should not cut off the wife from her rights of property under the general law simply because he had died testate instead of intestate. The purpose of the testator was to make a

better provision for the wife by will than the law makes without it. Then, if in ignorance of his financial condition, and with an anxious purpose to secure her comfort and independence, he attempts that which fails, must the charities of the law also fail? We think not. To so hold would be to declare that having undertaken to give more than he could, in justice to his creditors, give, the faultless woman shall have nothing, that the mistake of the husband shall be visited upon the wife, that she must suffer for his ignorance of his wealth.''

The policy of insurance bequeathed by Mr. Fleming to his wife was payable to his estate. As stated above, he left three daughters and children of one son surviving him. Had he died intestate as to this policy of insurance, his widow would have taken one-fifth the proceeds thereof. Undoubtedly, therefore, she took $4,000 of the proceeds of this insurance policy under his will. The policy being payable to his estate, Mr. Fleming was entitled to dispose of the proceeds thereof as he saw fit. *Chrisman* v. *Chrisman*, 141 Tenn., 424, and cases therein cited.

Subsection 2, under its terms, comes into operation where a provision in personal estate is made for the wife, ''but the whole of the husband's property, including the bequest, is taken for the payment of his debts.'' The bequest of this life insurance policy to Mrs. Fleming was not taken for her husband's debts and could not have been taken for his debts unless his will had expressly so provided. Code, section 8456. A natural construction of the language of subsection 2 excludes Mrs. Fleming from the benefits of its provisions, upon the facts heretofore stated.

The argument made in her behalf is that the husband's property referred to in subsection 2 is property that can be ''taken for the payment of his debts;'' that the pro-

ceeds of insurance on his life cannot be so taken and that although the widow retains a bequest of such property, she is still entitled to her statutory allowances. We are not able to follow this argument. The proceeds of a policy such as this constitute part of the husband's property. As above noted, he is free to dispose of such proceeds as he pleases. Such proceeds are merely exempt property. *Chrisman* v. *Chrisman, supra.* True, property of this kind does not constitute assets for the payment of debts (*Agee* v. *Sanders,* 127 Tenn., 686) but it is none the less property. It cannot be said that the provision made by this husband for his wife has wholly failed, when she retained $5,000 by reason of such provision. Five Thousand Dollars not taken for the payment of debts, $4,000 of which she could not have received except for the will.

The extent of the ruling in *Jarman* v. *Jarman, supra,* is the widow is entitled to the benefits of the informal dissent provided in subsection 2 in cases where the indebtedness of the husband leaves her no considerable portion of the provision made for her under his will. Such are not the facts before us.

As heretofore set out, the balance of Mr. Fleming's estate, after the payment of encumbrances, amounts to $7,690. The value of the widow's homestead and dower therein has been fixed by the chancellor at $2,033.43. Had Mr. Fleming died intestate, his widow would have received this sum and would have received one-fifth of the proceeds of the life insurance—$5,000 plus $1800 (the net value of the Equitable policy). She would accordingly have taken, under such circumstances, considerably less than the $4,000 of insurance she could not have taken except under the will. The $1600 in rents she collected as

devisee of the home place is quite as much as her year's allowance would have been. Plainly, in our opinion, subsection 2 cannot be invoked where the widow has received and retains more under the will than she would have obtained had the husband died intestate.

■ The home place devised to Mrs. Fleming was mortgaged for $4,000. During the time she was in possession of these premises, and before the real condition of her husband's estate developed, Mrs. Fleming made two annual payments of interest on this mortgage of $240 each, amounting to $480. For this sum she claims reimbursement from the estate, but this relief was denied her below. We think Mrs. Fleming is entitled to be repaid this amount from the funds in the hands of the executrix. The principle is stated in *Harrison* v. *Harrison,* 149 Tenn., 601, 607, quoting from Pomeroy's Equitable Remedies, 921b, as follows:

" 'The second class of parties entitled to subrogation consists of those who, while not legally bound to pay, yet might suffer loss if the obligation is not discharged, and so pay the debt in self-protection. In this class are included subsequent incumbrancers paying off a prior incumbrance, and owners of property, or of equities or partial interests therein, paying off prior incumbrances. It would seem here, as in the first class of cases, that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect.'

"The foot note gives numerous illustrations, among others: 'A legatee, devisee, or heir of property subject to claims of creditors and a wife who has released her dower.' ''

Mrs. Harrison was not a volunteer and her payment of interest on the mortgage was not officious. She was a devisee of the encumbered property and believed the payments necessary and proper for her protection, as they would have been, had not the claims of creditors deprived her of the devise. The home place sold for enough to pay off the mortgage and leave a balance of $700 which went into the hands of the executrix.

There can be no question but that the widow herein was put to her election between homestead and the testamentary provision in her favor. Such was the plain intention of the husband. The will said "the property devised and bequeathed to my wife in this will is intended as her full share of my estate and in lieu of all she would take if I had died intestate." Mr. Fleming was an accomplished lawyer and chose his words with care. See *Miller* v. *Fidelity Bankers Trust Co.,* 164 Tenn., 149.

It results that the claim of the widow herein to homestead and dower is denied but her claim for reimbursement for interest paid on the mortgage is allowed.

The costs of the appeal will be taxed to the estate.